ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2020-Jul-14 15:40:18
60CV-20-3858
C06D12 : 16 Pages

**IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS**
**_____ DIVISION**

| | |
|---|---|
| SAMUEL ACKER, PHILLIP DAVIDSON, and TERRY MORROW, individually, and on behalf of all others similarly situated, | Case No. |
| | Judge: |
| Plaintiffs, | |
| v. | **PLAINTIFFS' EMERGENCY MOTION PURSUANT TO ARK. R. CIV. P. 65 FOR A TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION** |
| PROTECH SOLUTIONS, INC., | |
| Defendant. | |

NOW COME Plaintiffs SAMUEL ACKER ("Acker"), PHILLIP DAVIDSON ("Davidson"), and TERRY MORROW ("Morrow") (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, by and through counsel, and bring their *Emergency Motion Pursuant to Ark. R. Civ. P. 65 for a Temporary Restraining Order and/or Preliminary Injunction* ("Motion"). In support of this Motion, Plaintiffs state as follows:

**I. INTRODUCTION.**

As a result of the COVID-19 pandemic, a large number of self-employed Arkansans and "gig economy" workers were suddenly unemployed, necessitating the creation of the Pandemic Unemployment Assistance ("PUA") program in Arkansas. *See*, Class Action Complaint ("Complaint" or "Compl."), ¶ 8. To manage this influx of unemployment claims, the Arkansas Division of Workforce Services ("ADWS") hired Defendant PROTECH SOLUTIONS, INC. ("ProTech" or "Defendant") to create, implement, and maintain a secure website for ADWS through which unemployment benefit claimants could apply for PUA program assistance online (the "PUA Application System"). *Id.*

The contract between the state of Arkansas and ProTech specifically required ProTech to ensure that the PUA Application System was secure, such that claimants' personally identifiable information ("PII")—*e.g.*, social security numbers and banking information—would be protected. Compl. ¶ 8. The contract also required ProTech to submit a data security plan that included automated notifications to the company and the State in the event of a data breach. *Id.*

Despite the contractual and legal obligation to protect PUA program claimants' PII, ProTech negligently and recklessly failed to secure the PUA Application System. Compl. ¶¶ 7-11, 16-18, 49. As a result of ProTech's actions and inactions, the PII—such as their social security numbers, birthdays, and banking information—of approximately 30,000 PUA claimants, including Plaintiffs and members of the Class defined in the Complaint,[1] was exposed in a massive data breach (the "Data Breach"). *Id.*

After the Data Breach was discovered on May 15, 2020, ProTech temporarily shut down the PUA Application System. Compl. ¶¶ 11-12. Although the PUA Application System is now back online, Plaintiffs and other Class members were and still are "locked out" of their accounts pending a "fraud review." *Id; see also* Affidavit of Samuel Acker in Support of Plaintiffs' Emergency Motion for a Temporary Restraining Order ("Acker Affidavit"), attached hereto as **Exhibit A**, ¶ 5; and Affidavit of Phillip Davidson in Support of Plaintiffs' Emergency Motion for a Temporary Restraining Order ("Davidson Affidavit"), attached hereto as **Exhibit B**, ¶ 6.

Since PUA Application System access is a prerequisite to obtaining PUA program payments, Plaintiffs and Class members have not received any such payments as a result of being "locked out" of their PUA Application System accounts. Compl. ¶ 12; Acker Affidavit, ¶ 5.

---

[1] Plaintiffs seek certify of a Class defined as follows: "All individuals who applied for Pandemic Unemployment Assistance ("PUA") with the Arkansas Division of Workforce Services through the PUA Application System designed, implemented, and maintained by Protech Solutions, and whose personal information and/or financial information was exposed in the Data Breach." Compl. ¶ 48.

2

Therefore, at one of the worst times in the lives of Plaintiffs and Class members, when they find themselves unemployed in the midst of a pandemic and resulting recession, and are therefore most in need of financial assistance, Plaintiffs and Class members are unable to receive it. *See* Compl. ¶ 9; Acker Affidavit, ¶¶ 5-8; Davidson Affidavit, ¶¶ 5-8.

As set forth in the Complaint, the Data Breach has far-reaching consequences—such as placing Plaintiffs and Class members at an increased risk of identity theft, and requiring Plaintiffs and Class members to vigilantly monitor their credit—and has actually resulted in identity theft and harm to Plaintiffs and Class members. *See, e.g.*, Compl. ¶¶ 13-15, 19-28. While these harms can be addressed through the normal course of litigation, Plaintiffs' and Class members' short-term needs cannot. Indeed, because Plaintiffs and Class members have not received (and will continue to not receive) the PUA program payments to which they are entitled until their PUA Application System accounts are "unlocked," they are (and will continue to be) unable to pay their bills and face imminent risk of not being able to pay for basic living expenses or maintain current payments on utility bills. Acker Affidavit, ¶¶ 7-8; Davidson Affidavit, ¶¶ 6-8. For example, Acker is having difficulties paying his living expenses, paying for groceries, and paying his utility bills. Acker is also not able to make regular monthly payments on unsecured lines of credit, and he is incurring late fees. Acker Affidavit, ¶¶ 7-8. Similarly, Davidson is having difficulties paying his household expenses, including paying for food and utilities. And Davidson received a motion to dismiss his Chapter 13 bankruptcy case because he has failed to (and cannot) make the necessary payments. Davidson Affidavit, ¶¶ 7-8.

The decision to grant preliminary relief is to "preserve the status quo until the merits are determined." *Customer Microsystems, Inc. v. Blake*, 344 Ark. 536, 541 (Ark. 2001) (quoting *Dataphrase Systems, Inc. v. C.L. Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) Accordingly,

3

Plaintiffs, individually, and on behalf of the Class, bring this Motion to require ProTech to "reopen" their PUA Application System accounts, which was the status quo prior to the Data Breach.

As set forth below, the requested temporary restraining order ("TRO") and/or preliminary injunction ("Injunction") will allow Plaintiffs and Class members to receive PUA program payments and avoid irreparable harm, as it will provide them with the monetary assistance the PUA program is designed to provide. Since the requested TRO/Injunction is necessary to avoid irreparable harm, and in light of the fact that Plaintiffs and Class members have a significant likelihood of success on the merits, the Court should grant the Motion.

## II. RELEVANT FACTS.

### 1. Plaintiff Samuel Acker

Acker filed an application for PUA on May 5, 2020. Acker Affidavit, ¶ 2. He received the Notice of Breach from ADWS on May 21, 2020. *Id.* ¶ 3. As a direct result of the Data Breach, Acker did not receive a PUA payment until June 8, 2020. *Id.* ¶ 4. Further, Acker is now locked out of the PUA Application System and has not received a PUA payment since June 15, 2020, and he is unable to apply for further PUA benefits due to a "fraud review". *Id.* ¶¶ 5-6. As a direct result of the Data Breach, Acker has begun to face irreparable harms due to his inability to pay for his ongoing basic living expenses, such as the ability to purchase groceries and maintain current payments on his utility bills. *Id.* ¶ 7. As a direct result of the Data Breach, Acker has been unable to pay all of his bills and has incurred penalties on his credit card accounts and other late fees. *Id.* ¶ 8.

### 2. Plaintiff Phillip Davidson

On May 5, 2020 Davidson filed his application for PUA. Davidson Affidavit, ¶ 3. He received the Notice of Breach from ADWS on May 21, 2020. *Id.* ¶ 4. Davidson has been locked out of the PUA Application System since June 1, 2020, and he has been unable to apply for further PUA benefits. *Id.* ¶ 6. As a direct result of the Data Breach, Davidson has not received a PUA payment since June 1, 2020, and he is now at risk of having his Chapter 13 bankruptcy (which he filed in March 2020) being dismissed for non-payment. *Id.* ¶ 7. In addition to his Chapter 13 bankruptcy being in jeopardy of dismissal, the denial of access to PUA benefits has caused Davidson the irreparable harm of not being able to afford his basic living expenses, including paying for groceries and maintaining current payments on his utilities. *Id.* ¶ 8.

## III. LEGAL ARGUMENT.

"[T]he primary purpose of preliminary injunctive relief is to preserve the status quo until the merits of a controversy are decided." *American Investors Life Ins. Co. v. TCB Transp.*, 312 Ark. 343, 345 (1993) (quoting *Citizens' Pipeline v. Twin City Pipeline*, 183 Ark. 1006, 39 S.W. 2D 1017 (1931)). The issuance of the requested TRO/Injunction is within the Court's discretion and is governed by Ark. R. Civ. P. 65 ("Rule 65"). *Arkansas Dep't of Human Services v. Ledgerwood*, 2017 Ark. 308, 8 (2017); *Three Sisters Petroleum, Inc. v. Langley*, 348 Ark. 167, 175 (2002).

"In determining whether to issue a TRO [or Injunction] pursuant to Rule 65, a circuit court must consider two issues: (1) whether irreparable harm will result in the absence of an injunction or restraining order, and (2) whether the moving party has demonstrated a likelihood of success on the merits." *Id.* at 7 (citing *Baptist Health v. Murphy*, 362 Ark. 506 (2005)); *AJ&K Operating Co. v. Smith*, 355 Ark. 510, 517 (2003); *Three Sisters Petroleum*, 348 Ark. at 175.

5

Courts have recognized that no one factor is dispositive, and that in balancing these two factors, "a party must show a lack of an adequate remedy at law to obtain relief in equity." *American Investors*, 312 Ark. at 345 (quoting *Compute-A-Call v. Tolleson*, 285 Ark. 355, 687 S.W. 2d 129 (1985)). Here, as set forth below, both of these factors weigh in favor of granting the Motion.

### A. There Is Substantial Likelihood That Plaintiffs Will Prevail on the Merits.

The test for determining a likelihood of success is whether there is a reasonable probability of success in the litigation. *Ledgerwood*, 2017 Ark. 308 at 12 (quoting *Custom Microsystems Inc. v. Blake*, 344 Ark. 536 (2001)). Such a showing of reasonable probability of success is a benchmark for issuing a preliminary injunction. *Id.*

While Plaintiffs have alleged three separate theories for recovery in this lawsuit, (1) Negligence; (2) Invasion of Privacy; and (3) Injunctive Relief, all of these theories stem from the same facts—that Defendant's actions and inactions resulted in the Data Breach. The fact that ProTech was responsible for ensuring the security of the PUA Application System is not in dispute, nor is the fact that the Data Breach occurred. *See*, Section I, *supra*.

Although it is possible that Plaintiffs may not prevail under every theory of liability at trial, there is little question that Defendant is liable—as evidenced by the admission that there was a data security incident and Plaintiffs' and Class members' PII was unsecured—and that Plaintiffs will prevail on at least one (or more) of the legal theories which they have pled. This is all that is necessary for Plaintiffs to demonstrate a likelihood of success on the merits of the underlying action. Therefore, this factor weighs in favor of granting the requested TRO/Injunction.

B.  **Irreparable Harm Will Occur If a TRO/Preliminary Injunction is Not Granted.**

Irreparable injury or harm, which must be shown for injunctive relief, is normally shown when it cannot be adequately compensated by money damages or redressed in a court of law. *See, Three Sisters Petroleum*, 348 Ark. at 175; *see also, Kruetzer v. Clark*, 271 Ark. 243, 244 (1980). Merely financial harm is not irreparable as it can be adequately compensated by monetary damages. *Three Sisters Petroleum*, 348 Ark. at 175. A finding that something beyond "mere inconvenience" will be caused by the litigation is needed to show irreparable harm. *Id*; *see also, Standard Oil Co. of Louisiana v. Reddick*, 202 Ark. 393, 396 (1941).

Here, as a result of being "locked out" of their PUA Application System accounts, Plaintiffs and Class members are unable to receive the PUA program benefits to which they are entitled. *See* Acker Affidavit, ¶¶ 5-6; Davidson Affidavit, ¶ 6. Although those benefits, in themselves, are monetary in nature, the harm caused by their continued unavailability goes beyond purely economic damages.

For example, because Plaintiffs have not received the PUA program benefits to which they are entitled, they cannot afford to purchase food, clothing, and other basic necessities. *See* Acker Affidavit, ¶ 7; Davidson Affidavit, ¶ 8. Acker also has been unable to pay monthly rent, credit card bills, etc., putting him at risk of eviction, account closures, and repossession. *See* Acker Affidavit, ¶¶ 7-8. Davidson is at risk of having his Chapter 13 bankruptcy dismissed due to the inability to have access to his PUA benefits. *See* Davidson Affidavit, ¶ 7.

Plaintiffs' inability to pay their monthly bills and afford basic necessities puts them at a risk of permanent and irreversible harm and is sufficient to establish irreparable harm. *Ledgerwood*, 2017 Ark. 308 at 10 ("Appellees admit that they have suffered lack of food, have remained in soiled clothes, have gone without bathing[,] have become more isolated, and have

/

suffered worsened medical conditions...Given this evidence, appellees have provided a sufficient showing of irreparable harm to justify the circuit court's issuance of a temporary restraining order.").

Indeed, the entire purpose of the PUA program is to lessen the harms associated with unemployment by providing claimants with short-term monetary assistance. *See, Buckstaff Bath House Co. v. McKinley*, 198 Ark. 91 (1939) ("If unemployment cannot be avoided, at least its tragic consequences can be ameliorated. Such is the purpose of the statute in question."). For this reason, the United States Supreme Court has observed that unemployment "benefits are a matter of statutory entitlement for persons qualified to receive them," such that "their termination involves state action that adjudicates important rights" guaranteed by due process. *Goldberg v. Kelly*, 397 U.S. 254, 262 (1970). The erroneous deprivation of core constitutional rights also constitutes an irreparable harm. *See, Muntaqim v. Hobbs*, 2017 Ark. 97, 4 (2017) ("The Supreme Court has clearly stated that the denial of First Amendment rights, even for minimal amounts of time, constitutes irreparable harm."); *McCuen v. Harris*, 321 Ark. 458, 467 (1995).

Simply put, Plaintiffs and Class members are among the neediest during this difficult economic time and require the short-term economic assistance the PUA program was intended to provide. Yet, by preventing Plaintiffs and Class members from accessing the PUA Application System unless and until they can prove that their PUA program claims are legitimate—and even then, still failing to give them access—Defendant places their needs as subservient to its own.

In other words, Plaintiffs and Class members should not have to wait while Defendant cleans up its own mess before they are able to obtain much needed public aid. The Data Breach was a problem of Defendant's own making, and Defendant should be required to bear the

consequences. Therefore, the requested TRO/Injunction is both necessary to prevent further irreparable injury to Plaintiffs and Class members, and appropriate under the circumstances.

### C. The Court, in Its Discretion, May Dispose of the Bond Requirement Before Entering a TRO/Preliminary Injunction.

Rule 65(c) explicitly allows this Court discretion to order the moving party to provide a bond in seeking a TRO/Injunction. Here, there is a good cause for this Court to exercise its discretion and issue the TRO/Injunction in the absence of a bond.

First, as discussed above, Plaintiffs and Class members applied for assistance under the PUA program because they are unemployed and have significant short-term economic need. *See* Acker Affidavit, ¶¶ 5-8; Davidson Affidavit, ¶¶ 6-8. Since requiring Plaintiffs to provide a bond would "effectively foreclose [their] right to a preliminary injunction" or TRO, the Court can waive this requirement. *McCuen*, 321 Ark. at 467.

Second, "the purpose of a bond is to indemnify the parties enjoined against damages occasioned by the wrongful issuance of the injunction." *Weathersbee v. Wallace*, 14 Ark. App. 174, 177 (1985). In this case, however, the requested TRO/Injunction would only require Defendant to permit Plaintiffs and Class members to *access* the PUA Application System it administers and would not result in any monetary payments directly from Defendant. As such, there are no potential damages for which Defendant may require indemnification.

Therefore, the Court should issue the TRO/Injunction without requiring a bond.

### IV. CONCLUSION.

For the reasons stated herein, the Court should enter the requested TRO/Injunction, without bond, requiring Defendant to immediately restore Plaintiffs' and Class members' access to the PUA Application System. A proposed order granting the requested relief, with all necessary factual and legal findings, is attached hereto as **Exhibit C**.

WHEREFORE, Plaintiffs request that the Court enter a TRO and/or Preliminary Injunction against Defendant, as follows:

    A.    Mandatorily enjoin Defendant to immediately restore Plaintiffs' and Class members' access to the PUA Application System;

    B.    Award Plaintiffs their costs and attorney fees; and

    C.    Grant any other relief as is deemed just and proper.

Respectfully submitted,

/s/ Dustin McDaniel
Dustin McDaniel
**MCDANIEL, WOLFF & BENCA, PLLC**
1307 West 4th Street
Little Rock, Arkansas 72201
(501) 954-8000 telephone
*dmcdaniel@mwbfirm.com*

Marc E. Dann (*pro hac vice* anticipated)
Brian D. Flick (*pro hac vice* anticipated)
**DANNLAW**
P.O. Box 6031040
Cleveland, Ohio 44103
(216) 373-0539 telephone
(216) 373-0536 facsimile
*notices@dannlaw.com*

Thomas A. Zimmerman, Jr. (*pro hac vice* anticipated)
*tom@attorneyzim.com*
Sharon Harris (*pro hac vice* anticipated)
*sharon@attorneyzim.com*
**ZIMMERMAN LAW OFFICES, P.C.**
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile
*www.attorneyzim.com*
*firm@attorneyzim.com*

*Counsel for Plaintiffs and the putative Class*

IN THE CIRCUIT COURT
PULASKI COUNTY, ARKANSAS

SAMUEL ACKER, PHILLIP DAVIDSON,     Case No.
and TERRY MORROW, individually, and on
behalf of all others similarly situated,     **Judge:**

     Plaintiffs,

v.

PROTECH SOLUTIONS, INC.,

     Defendant.

### AFFIDAVIT OF SAMUEL ACKER IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER

I, SAMUEL ACKER, hereby certify as follows:

1. I am over the age of 18 years. I am competent and willing to testify as to the facts set forth in this Affidavit, which are based on my personal knowledge, unless stated otherwise.

2. On May 5, 2020 I applied online for Pandemic Unemployment Assistance benefits ("PUA") online through the Arkansas Department of Workforce Services's ("ADWS") PUA website.

3. On May 21, 2020, I received an email from ADWS notifying me that my personal and financial information was exposed in the Data Breach.

4. I did not receive my first PUA benefit check until June 8, 2020.

5. Since June 8, 2020 I have been "locked out" of the PUA Application System and unable to apply for further PUA benefits due to a "fraud review".

6. I have not received any other PUA benefit payments since June 15, 2020.

Exhibit A

7. As a result of not receiving the PUA Benefits, I have been having difficulties paying my on-going living expenses including difficulties in having available funds to afford groceries and the ability to maintain current payments on my utility bills.

8. In addition to the financial difficulties listed in Paragraph 7 above, I have also been unable to make my regular monthly payments on unsecured lines of credit and have begun accruing late fees on these accounts.

I certify under the penalty of false swearing that the foregoing is true.

*Samuel Acker*    *July 13, 2020*

IN THE CIRCUIT COURT
PULASKI COUNTY, ARKANSAS

SAMUEL ACKER, PHILLIP DAVIDSON,     Case No.
and TERRY MORROW, individually, and on
behalf of all others similarly situated,     Judge:

    Plaintiffs,

v.

PROTECH SOLUTIONS, INC.,

    Defendant.

### AFFIDAVIT OF PHILLIP DAVIDSON IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER

I, Phillip Davidson, hereby certify as follows:

1. I am over the age of 18 years. I am competent and willing to testify as to the facts set forth in this Affidavit, which are based on my personal knowledge, unless stated otherwise.

2. I am also a Debtor in Chapter 13 Bankruptcy Case No. 20-11313 pending in the United States Bankruptcy Court for the Eastern District of Arkansas, Northern Division. (the "Chapter 13")

3. On May 5, 2020 I applied online for Pandemic Unemployment Assistance benefits ("PUA") online through the Arkansas Department of Workforce Services's ("ADWS") PUA website.

4. On May 21, 2020, I received an email from ADWS notifying me that my personal and financial information was exposed in the Data Breach.

5. I did not receive my first PUA benefit check until June 1, 2020.

Exhibit B
Scanned with CamScanner

6. Since June 1, 2020 I have been "locked out" of the PUA Application System and unable to apply for further PUA benefits.

7. On June 2, 2020 I received a Motion to Dismiss in my Chapter 13 case for failure to make payments as required under my Chapter 13 Plan. My inability to make payments is directly related to the lack of access to my PUA benefits and without this access I had to scramble from other basic necessity payments to bring my Chapter 13 current.

8. In addition to the hardship in my Chapter 13, the lack of access to my PUA benefits has made it difficult to afford my ordinary household expenses, including food and utilities.

I declare under penalty of perjury under laws of the State of Arkansas that the foregoing statements are true and correct.

*Samuel Acker* / Phillip Davidson

COUNTY OF Greene

:: ss

STATE OF ARKANSAS

Before me, a Notary Public in and for said county, personally appeared the above named Samuel Acker *Phillip Davidson* who acknowledged he did sign the foregoing document and that the same is his free act and deed.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed my official seal at Paragould, Arkansas on this 14 day of July, 2020.

*Becky Murphy Hatosy*
NOTARY PUBLIC

BECKY MURPHY-HATOSY
Notary Public - Arkansas
Greene County
Commission # 12361222
My Commission Expires Jun 19, 2027

Scanned with CamScanner

# IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## _____ DIVISION

| | |
|---|---|
| SAMUEL ACKER, PHILLIP DAVIDSON, and TERRY MORROW, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PROTECH SOLUTIONS, INC.,<br><br>Defendant. | Case No.<br><br>Judge:<br><br>**PLAINTIFFS' EMERGENCY MOTION PURSUANT TO ARK. R. CIV. P. 65 FOR A TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION** |

## **TEMPORARY RESTRAINING ORDER**

THIS MATTER coming on for hearing on *Plaintiffs' Emergency Motion Pursuant to Ark. R. Civ. P. 65 for a Temporary Restraining Order and/or Preliminary Injunction*, with/without notice, counsel for the Plaintiffs/parties present, the Court being fully advised in the premises, with the Court hearing argument of counsel and the Court reviewing the pleadings, submissions and affidavits,

THE COURT FINDS:

(a) Plaintiffs have demonstrated a showing of irreparable harm if this Court does not enter the Temporary Restraining Order to preserve the *status quo*;

(b) Plaintiffs have demonstrated that no adequate remedy at law exists, necessitating the entry of the Temporary Restraining Order;

(c) Plaintiffs have shown a likelihood of success on the merits on the issues raised by the motion, which the Court finds are the issues predominating this proceeding;

(d) After reviewing the equities and balancing the hardships in entering the Temporary Restraining Order, the Court finds that the equities favor Plaintiffs;

(e) For good cause shown, the Court finds that the Temporary Restraining Order should be entered without a bond.

IT IS HEREBY ORDERED:

1. Plaintiffs' Emergency Motion for a Temporary Restraining Order is granted.

Exhibit C

2. Defendant is mandatorily enjoined to immediately restore Plaintiffs' and putative Class members' access to the Pandemic Unemployment Assistance Application System.

3. This injunction shall remain in full force and effect until _____.

4. This injunction is designed to maintain the *status quo* between the parties.

5. This matter is set for status at _____ on _____, 2020, in Room _____, at which time a date will be set for a preliminary injunction hearing.

_____
Judge