**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

| | |
|---|---|
| SAMUEL ACKER, *et al.*, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No.: 4:20-cv-00852 DPM |
| v. | Chief Judge D.P. Marshall Jr. |
| PROTECH SOLUTIONS, INC., | |
| Defendant. | |

**PLAINTIFFS' BRIEF IN SUPPORT OF EMERGENCY MOTION FOR LEAVE TO
CONDUCT LIMITED EXPEDITED DISCOVERY**

Plaintiffs SAMUEL ACKER, PHILLIP DAVIDSON, TERRY MORROW, ARLAN PECKHAM, AARON SHEPARD, AUBREY WHITNEY, and ROGER WINNEBERGER III (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, by and through counsel submit their Brief in Support of Emergency Motion for Leave to Conduct Limited Expedited Discovery. Plaintiffs' requested discovery is attached hereto as Exhibits A, B and C.

**I.    FACTUAL BASIS FOR THE MOTION**

**A.    The Data Breach.**

Plaintiffs brought this action, for themselves and on behalf of a Class, against Protech for its actions and inactions that resulted in a data breach affecting applicants to the Pandemic Unemployment Assistance ("PUA") program in Arkansas. At one of the worst times in the lives of Plaintiffs and Class members, when they find themselves unemployed in the midst of a pandemic and resulting recession, Protech was brought in as an expert consultant by Arkansas Department of Workforce Services ("ADWS") to facilitate the secure and efficient processing of

Plaintiffs' and Class members' claims for PUA. *See* Amended Compliant ("Am. Compl.") ¶ 12. However, Protech negligently and recklessly made Plaintiffs' and Class members' path to recovery significantly harder by putting their identity and credit standing at risk. *Id.* ¶ 13. Protech has exposed and failed to protect Plaintiffs' and other PUA applicants' personal and financial information, including their names, social security numbers, and street addresses, and potentially other personal and financial information, as well as private information that applicants were required to provide on behalf of members of their families. *Id.* ¶ 14.

**B.** **The Impact of the Data Breach on its Victims.**

**1.** **Plaintiff Samuel Acker.**

Acker is disabled. Prior to the pandemic, he worked as an independent contractor. On or about May 5, 2020, Acker applied online for PUA benefits through the ADWS PUA Application System created, implements, and maintained by Protech. As a direct result of the Data Breach, Acker did not receive a PUA payment until June 8, 2020. Further, Acker had been locked out of the PUA Application System pending a purported fraud review, and had not received a PUA payment since June 15, 2020. Acker faces irreparable harm due to his inability to pay for his ongoing basic living expenses, such as the ability to purchase groceries and maintain current payment on his utility bills and credit card bills. Am Compl. ¶¶ 33-37.

**2.** **Plaintiff Phillip Davidson.**

Davidson was self-employed prior to the pandemic. On or about May 5, 2020, Davidson applied for PUA benefits through the ADWS PUA Application System created, implemented, and maintained by Protech. Davidson had been locked out of the PUA Application System since June 1, 2020. As a direct result of the Data Breach, Davidson has not received a PUA payment since June 1, 2020, has been unable to pay all of his bills, buy groceries, or pay for utilities, and he has

fallen behind on his mortgage, which puts him at risk of having his Chapter 13 bankruptcy case dismissed. Am. Compl. ¶¶ 38-42.

### 3.    Plaintiff Terry Morrow.

Morrow was self-employed before becoming unemployed, and he worked for Tyson Foods and Birchtree in Arkansas. On or about May 14, 2020, Morrow applied online for PUA benefits through the ADWS PUA website created, implemented, and maintained by Protech. During the application process, Morrow supplied her account information for her Skylight Net Spin Card with Regions Bank for direct deposit. As a result of the Data Breach, someone fraudulently used her name and social security number to set up an account with Bank of America in Texas, and without her authorization or knowledge transferred all of her money out of her Skylight Net Spin account to the fraudulent account. Morrow spent 20 hours trying to get the money back, including filing a police report and dealing with the bank. She fell behind on paying her utilities and other bills, and is being charged fees and interest as a result. Am. Compl. ¶¶ 43-47.

### 4.    Plaintiff Arlan Peckham.

Peckham was self-employed before becoming unemployed prior to the pandemic. On or about May 13, 2020, Peckham applied online for PUA benefits through the ADWS PUA website created, implemented, and maintained by Protech. Since June 30, 2020, Peckham has been "locked out" of the PUA Application System and is unable to apply for further PUA benefits. Further, Peckham is facing irreparable harm and facing difficulties paying his ongoing living expenses, groceries, and utility bills. His gas bill is past due and his gas has been shut off. He now has no access to how water in his house. Am. Compl. ¶¶ 48–54.

**5.      Plaintiff Aaron Shepard.**

Shepard was self-employed before becoming unemployed prior to the pandemic. Shepard applied online for PUA benefits through the ADWS PUA website created, implemented, and maintained by Protech. As a direct result of the Data Breach, Shepard has experienced irreparable harm, as he has been a victim of identity theft and is without funds to pay for necessities. Shepard provided his Netspend account information and requested his PUA benefits be directly deposited into the account. A criminal obtained the account information and without authorization took money out of the account. Shepard's credit report shows a number of attempts to open accounts in his name since the Data Breach. Shepard is having difficulties paying living expenses, buying groceries and maintaining current on his utility bills. Most sadly, Shepard was unable to afford necessary medication for his pregnant fiancé, which resulted in the loss of their child. Am. Compl. ¶¶ 55–63.

**6.      Plaintiff Aubrey Whitney.**

Whitney was self-employed before becoming unemployed prior to the pandemic. Whitney applied online for PUA benefits through the ADWS PUA website created, implemented, and maintained by Protech. As a direct result of the Data Breach, Whitney has been locked out of the PUA account since around May 28, 2020, has not received a payment since May 21, 2020, and has been having difficulties paying his ongoing living expenses, affording groceries, rent, and his electricity bill. Am. Compl. ¶¶ 64–70.

**7.      Plaintiff Roger Winneberger III.**

Winneberger was employed by Patriot Trucking prior to the pandemic. On June 9, 2020, Winneberger applied online for PUA benefits through the ADWS PUA website created, implemented, and maintained by Protech. Winneberger has not received any PUA benefits since

submitting his application. Since June 9, 2020, Winneberger has communicated with Protech on at least twenty-four to thirty occasions requesting access to the PUA website. On multiple occasions, Winneberger submitted copies of documentation to verify his identity, as requested by Protech. Despite this, Winneberger has not received access to the PUA website or any PUA benefits. As a direct result of the Data Breach, Winneberger has been having difficulties paying his ongoing living expenses, including groceries, rent, and his electricity bill. Am. Compl. ¶¶ 71–80.

**C.    Plaintiffs' Emergency Motion for Temporary Restraining Order and/or Preliminary Injunction.**

On July 14, 2020, in the face of the rampant identity theft issues Plaintiffs and Class members were experiencing and continue to face, Plaintiffs brought their Emergency Motion Pursuant to Ark. R. Civ. P. 65 for a Temporary Restraining Order and/or Preliminary Injunction to compel Protech to immediately restore Plaintiffs' and Class members' access to the PUA Application System, which was entered on the Court's docket on July 21, 2020. Dkt. # 3. On July 22, 2020, the Court ordered Protech to file a response to the request for a preliminary injunction by July 29, 2020, and Plaintiffs to file a reply by August 5, 2020. Dkt. # 9.

As set forth in the Declaration of Thomas A. Zimmerman, Jr., attached hereto as Exhibit D, on July 28, 2020, Mr. Zimmerman and co-counsel Marc Dann held a telephonic conference with counsel for Protech, James Phillips. Zimmerman Decl. ¶ 6. During the course of the conversation, Mr. Phillips stated that Protech did not have the power or the authority to lock or unlock PUA benefits accounts, and that the ADWS possessed the exclusive authority to lock and unlock accounts. Zimmerman Decl. ¶ 7. Mr. Phillips said nothing about the accounts of Plaintiffs, or whether they would be unlocked at a future time, or the number of applicants whose accounts were locked or otherwise impacted as a result of the Data Breach. Zimmerman Decl. ¶ 8. Counsel

also discussed the concern that the emergency motion sought injunctive relief that Protech may not be authorized to perform. Zimmerman Decl. ¶ 8.

Protech filed its two-paragraph response to Plaintiffs' emergency motion on July 29, 2020. Dkt. # 13. Citing no authority or legal standard, Protech argued that the motion should be denied because "the fraud review holds on Samuel Acker's and Phillip Davidson's accounts were released, and their access to the PUA Application System was restored." Dkt. # 13, at page 1. Protech cited to the Declaration of Kenneth French, who claims to be the "[Director/Program Manager] at Protech" and the project manager for the ADWS PUA application system. French Decl ¶ 2, Dkt. # 13-1. French claims to be "familiar with the PUA Application System and the procedure for reviewing a PUA claimant's account to determine whether fraudulent activity has taken place." French Decl. ¶ 3. Although French does not claim he has personal knowledge regarding the status of Plaintiffs' accounts, he claims that Acker's account was released on July 17, 2020, Davidson's account was released on July 20, 2020, and Morrow's account was never locked. French Decl. ¶ 4-5.[1]  No documentary evidence or business records are submitted to support French's claims.

## II.   LEGAL STANDARD

A court may authorize early discovery before the Rule 26(f) conference "for the parties' and witnesses' convenience and in the interests of justice." Fed. R. Civ. P. 26(d). Courts in the Eighth Circuit have permitted expedited discovery in preparation for a preliminary injunction hearing." *Planned Parenthood Arkansas & E. Oklahoma v. Gillespie*, 4:15-CV-566-KGB, 2018 WL 1904845, at *1 (E.D. Ark. Mar. 20, 2018).

---

[1] French's Declaration seems to contradict the assertion in Protech's response brief that the fraud review holds on Acker's and Davidson's accounts were released, and their access to the PUA Application System was restored, "on July 29, 2020." Dkt. # 13.

Courts use one of two standards to determine whether a party is entitled to conduct expedited discovery. Some courts apply a "good cause" or "reasonableness" standard, while others analyze a set of factors similar to those for obtaining a preliminary injunction. *See Special Situations Cayman Fund, L.P. v. Dot Com Entertainment Group, Inc.,* 2003 WL 23350128 at *1, n. 7 (W.D.N.Y.2003) (slip op.). The Court of Appeals for the Eighth Circuit has not adopted either standard. *Monsanto Co. v. Woods*, 250 F.R.D. 411, 413 (E.D. Mo. 2008) (adopting good cause standard).

The good cause standard requires the moving party to show that the need for expedited discovery outweighs the prejudice to the responding party, in consideration of the administration of justice. *Gillespie*, 2018 WL 1904845, at *1. Under the reasonableness standard, the court looks at five factors: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Welsco, Inc. v. Brace*, No. 4:12-cv-00394-KGB, 2012 WL 302514, at *1 (E.D. Ark. July 24, 2012). "Expedited discovery is generally appropriate in cases . . . where a party is attempting to prepare for a preliminary injunction hearing." *Id.*

## III.   ARGUMENT

Plaintiffs request leave to conduct the limited expedited discovery to support their emergency motion and provide the Court with the necessary facts to determine whether Protech or the ADWS, or both of them, are able to provide the relief sought in the emergency motion. The limited discovery requests are attached hereto as Exhibits A, B and C, and consist of a Rule 45 subpoena for documents to ADWS, a Rule 45 deposition subpoena to ADWS, and a Rule 30(b)(6) deposition notice to Protech.

A.       **Plaintiffs Have Good Cause For Their Request.**

Plaintiffs have good cause for the limited expedited discovery they request. Plaintiffs and the Court need to know that Protech has the actual authority to comply with the injunction that Plaintiffs seek in the emergency motion. Plaintiffs seek an order compelling Protech to unlock the accounts of Plaintiffs and the Class members to allow PUA benefits to be distributed to them, and to avoid the irreparable harm inflicted on Plaintiffs and the Class members as a result of the Data Breach and their unemployment benefit account freezes. *See* Dkt. # 3. Counsel for Protech stated during a phone call with counsel for Plaintiffs that ADWS, not Protech, has the authority and control over the account statuses of PUA applicants, and only ADWS has the authority to lock and unlock PUA accounts. *See* Zimmerman Decl. ¶ 7.

In apparent conflict with Protech's counsel's representations, Protech's declarant, Mr. French, indicates that he is familiar with the procedure for the supposed fraud reviews that are keeping Plaintiffs and the other Class members from their desperately needed PUA benefits. *See* French Decl. ¶ 3. Rather than provide the Court with the necessary facts within its knowledge regarding the control over the frozen PUA accounts of all Arkansas PUA applicants, Protech cynically seeks to moot Plaintiffs' emergency motion by providing *only the two Plaintiffs* with the relief Plaintiffs seek on behalf of the entire Class. Protech's conduct in unlocking just the Plaintiffs' accounts in a brazen attempt to avoid the oversight of the Court suggests that it *does* have authority over PUA accounts. Plaintiffs should be entitled to learn how their accounts were unlocked after the emergency motion was filed, yet the accounts of tens of thousands of other PUA applicants remain locked. Plaintiffs' requested discovery is aimed at identifying who has the authority to lock and unlock PUA accounts. This is critical to Plaintiffs' motion for injunctive relief. The discovery is also to designed to obtain facts regarding the number of accounts that are locked, so that the

Court can easily determine if an order to unlock the accounts has been complied with (*i.e.*, enforcement is feasible).

### B.      Protech Will Not Be Prejudiced.

Protech will not be prejudiced by the discovery. The discovery is narrowly tailored and is needed as a result of Protech's own refusal to provide the Court with sufficient information (exclusively in its possession) to rule on Plaintiffs' motion for preliminary injunction. Instead of responding substantively to the emergency motion, Protech unlocked the Plaintiffs' accounts in an effort to moot out their claim for emergency relief. There can be no dispute that Plaintiffs' and Class members' interests in the resumption of their PUA benefits is a significant interest. The allegations and declarations submitted contemporaneously herewith amply establish the pressing need for immediate and timely relief.[2]  Protech seeks to play games by picking off Plaintiffs while leaving the rest of the Class members in the lurch. The Court should not countenance such conduct by a party placed in a position of public trust.

Plaintiffs need the requested discovery before their August 5, 2020 reply brief is due. *See* Dkt. # 9. That is why Plaintiffs seek the relatively short response times for this targeted discovery. Protech does not indicate that it is unable to so, and provides no evidence or suggestion regarding the burden of responding within that timeframe. Protech's own failure to adequately support its two-paragraph Brief in Opposition to Plaintiff's Motion for TRO and Preliminary Injunction with any details or facts regarding the relief requested is what necessitates and counsels in favor of the requested expedited discovery.

---

[2] Plaintiffs are contemporaneously filing a supplement and joinder to the emergency motion, adding additional Plaintiffs who are currently "locked out" of their PUA accounts. Thus, Protech's attempt to moot the emergency motion has failed.

Plaintiffs were not dilatory in seeking this targeted discovery. Plaintiffs first learned of the issue of who has authority to unlock PUA accounts on July 28, 2020; Plaintiffs waited to see how Protech addressed that issue in Protech's response brief (filed July 29, 2020); and when Protech failed to advise the Court of the answer in its response brief, Plaintiffs issued the targeted discovery the next day (on July 30, 2020).

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that their Emergency Motion for Leave to Conduct Limited Expedited Discovery be granted, and the Court order such other relief as the Court deems appropriate.

Respectfully submitted,

/s/ Thomas A. Zimmerman, Jr.

Thomas A. Zimmerman, Jr. (*pro hac vice*)
*tom@attorneyzim.com*
Sharon Harris (*pro hac vice* anticipated)
*sharon@attorneyzim.com*
**ZIMMERMAN LAW OFFICES, P.C.**
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile
*www.attorneyzim.com*
*firm@attorneyzim.com*

Marc E. Dann (*pro hac vice* pending)
Brian D. Flick (*pro hac vice* anticipated)
**DANNLAW**
P.O. Box 6031040
Cleveland, Ohio 44103
(216) 373-0539 telephone
(216) 373-0536 facsimile
*notices@dannlaw.com*

Dustin McDaniel
**MCDANIEL, WOLFF & BENCA, PLLC**

1307 West 4th Street
Little Rock, Arkansas 72201
(501) 954-8000 telephone
*dmcdaniel@mwbfirm.com*

*Counsel for Plaintiffs and the putative Class*